Smith v. Little Pittsburg Coal Co.

AMANDA SMITH, Defendant in Error, v. LITTLE
PITTSBURG COAL COMPANY, Plaintiff
in Error.

Kansas City Court of Appeals, May 2, 1898.

1. **Master and Servant**: ASSUMPTION OF RISK: NEGLIGENCE AND
CONTRIBUTORY NEGLIGENCE: JURY QUESTION. Mere knowledge of a
defect in a place of work will not defeat an action by the servant, but
the question of contributory negligence is to be determined by the
jury from such knowledge and the other circumstances in evidence;
and in this case the question was properly submitted to the jury.

2. **Evidence**: SUBSEQUENT DECLARATIONS OF AGENT: INSTRUCTION.
Declarations of an agent, such as a pit boss, as to the cause of an
employee's death are inadmissible in an action against the master,
but in this case their withdrawal by an instruction cured the error.

*Appeal from the Macon Circuit Court.*—HON. ANDREW
ELLISON, Judge.

AFFIRMED.

GEORGE & LOWE and W. H. SEARS for plaintiff in
error.

(1) The court should have given the instruction
asked by defendant at the close of plaintiff's evidence,
which was in the nature of a demurrer to plaintiff's
evidence, as all of the evidence in the case shows that
deceased was an experienced miner, forty-three years
of age, and that he had worked in the mine and in the
roadway where the injury occurred, for seventeen
months continuously, just prior to the injury. And
the evidence shows that his work and his duty in con-
nection with that mine necessarily made him more
familiar with the actual condition of the place where
the accident occurred than the owner of said mine or

any other person connected therewith, for the reason that there was not a night so far as the evidence discloses, during that entire time, but what he passed along and under the place where the injury occurred, as often as twice and many nights much oftener. Watson v. Coal Co., 52 Mo. App. 366; McKenna v. R'y, 54 Mo. App. 161; Moore v. Wire Mill Co., 55 Mo. App. 491; Fugler v. Bothe, 117 Mo. 475; Spiva v. Coal & Mining Co., 88 Mo. 68–70; Padlock v. R'y, 60 Mo. App. 329–339; Olson v. McMullen, 24 Minn. 94; Walsh v. R. R., 27 Minn. 367.

DYSART & MITCHELL for defendant in error.

Notice or knowledge of defects is not of itself sufficient to defeat a recovery, unless the danger was so apparent as to render the conduct of the servant imprudent and reckless. Conroy v. Iron Works, 62 Mo. 35; Stoddard v. R. R., 65 Mo. 514; Thorpe v. R. R., 89 Mo. 650; Delvin v. R. R., 87 Mo. 545; Bridges v. R. R., 6 Mo. App. 389; Dale v. R. R., 63 Mo. 455; Huhn v. R. R., 92 Mo. 440; Stevens v. R. R., 96 Mo. 207; Soeder v. R. R., 100 Mo. 673. (2) When it is proved or conceded that a corporation has been guilty of negligence in the omission of a statutory requirement, or a duty imposed by law, and the plea of contributory negligence is interposed, "a clear case of contributory negligence must be established before the courts, as a matter of law, will exempt them from liability on that ground." Russell v. Receivers, 70 Mo. App. 88; Petty v. R. R., 88 Mo. 306, 321; Eichorn v. R'y, 130 Mo. 575.

SMITH, P. J.—Action by plaintiff to recover damages for the death of her husband which took place while he was at work for defendant in its coal mines. The undisputed evidence showed the case to be about

STATEMENT.

this: Mr. Howe, the pit boss, had control of the defendant's mines and of the persons engaged at work therein. It was the duty of the pit boss to direct when brushing should be done and rocks removed out of the roof entries and to furnish timbers when required to prop up and make safe the mine entries. The plaintiff's husband and one Johnson were night roadmen in the defendant's mines, and it was their duty as such to clear up the tracks and remove rocks and other obstructions from the same so that the cars could run during the day between the rooms and the foot of the shaft. It appears that something like two weeks before the accident, which occasioned the injury to plaintiff's husband, the roof at the place where such accident occurred had been strapped by order of the pit boss, but that a "squeeze" had come and the straps had been mashed down and in consequence some rock had fallen from the roof of the entry.

The roadman Johnson testified that the pit boss directed him to go into the entry and clear out the rocks that had fallen from the roof there, and the next night after he had done this he (Johnson) told the pit boss that he believed "that place ought to be strapped," and that the latter said: "There is no use to strap any more. Let it all fall out until it gets high enough and wide enough to take big timbers and we will timber it then with big timbers." This witness further testified that some time before the accident he said to the pit boss: "Let's go in there and timber up this dangerous place, and he said: 'No, the company is kicking on too much expense we have now.' He told me he had no timbers and they refused timbers and expense." Notwithstanding this the entry was continuously used by the miners up to the time of the accident. It seems the pit boss himself passed through it as often as twice

a day for the two weeks preceding the accident. It further appears that while the plaintiff's husband, engaged in the performance of the duties required of him as roadman, was passing along the "dangerous place" under the roof of the entry, a large stone fell therefrom upon him thereby causing his death..

The question now is whether these facts disclose any liability on the part of the defendant to plaintiff. The general rule is that it is the duty of the master to furnish the servant in his employment a reasonably safe place to work and in default thereof he is guilty of negligence. What is a reasonably safe place to work, where the evidence with respect thereto is conflicting, is always for the consideration of the jury, but where it is all one way it becomes a question of law to be determined by the court. And where the facts relating to the negligence are such that reasonable minds may differ with respect thereto the case is one for the determination of the jury. And the general rule just stated defining the duty of the master to the servant extends to such unnecessary and unreasonable risks which are in fact known to him, but such as he might reasonably be expected to know under the facts and circumstances connected with the service. The servant assumes such risks as are reasonably necessary and incident to his employment, as well also as such extraordinary and unusual risks as he may see fit to knowingly assume. Doyle v. Trust Co., 140 Mo. 1.

*MASTER and servant: assumption of risk: negligence and contributory negligence: jury question.*

There can be no question in the present case that the defendant was fully aware of the defective condition of the entry for at least two weeks before the happening of the accident by which the plaintiff's husband lost his life. It is in effect conceded that the defendant, in refusing to repair the defect in the entry and to render it reasonably safe by propping up the roof thereof with

suitable timbers, thereby committed a breach of its common law duty to plaintiff's husband. But it is contended that the plaintiff's husband continued in the employment of the defendant after he acquired a knowledge of the defective condition of the entry and that he thereby waived all objections thereto, and took upon himself all the risk arising from using the same. That the knowledge of the plaintiff as to the defective condition of the entry was quite equal to that of the defendant is a fact that can not be controverted.

Was it the duty of plaintiff's husband to abandon his contract of employment because of the breach of duty on the part of the defendant? Mere knowledge that the entry was defective and that risk was to be incurred in its use was not, as a matter of law, sufficient to defeat the plaintiff's action, if the danger was not such as to threaten immediate injury, or if it was reasonable to suppose the entry might be safely used by the exercise of care. Stoddard v. R'y, 65 Mo. 514; Delvin v. Ry, 87 Mo. 545; Huhn v. R'y, 92 Mo. 440; Hamilton v. Mining Co., 108 Mo. 364; O'Mellia v. R'y, 115 Mo. 205; Holloran v. I. & F. Co., 133 Mo. 470. There is no ground for claiming that the entry was so glaringly defective and unsafe that a man of common prudence would not have used it, or that it was so dangerous as to threaten immediate injury. Even though the entry was dangerous, yet the plaintiff's husband knew that not only the defendant's pit boss but a great number of the defendant's other workmen, with an equal knowledge of its dangerous condition, had safely passed and were daily passing through it, and hence a man of common prudence might well have concluded that though it was more than ordinarily dangerous that he could, in like manner, continue to pass through it in safety until the necessary repairs should be made. It seems that the pit boss expected

there would be a further falling away of rock from the roof of the entry and so expressed himself to the road-men, but at what time in the future this would occur was, of course, unknown to all. It was not only possible but probable that it would occur at some future time. It can not therefore be said that the danger was such as to threaten immediate injury.

The question whether or not continuing in the service of defendant after knowledge of the danger arising from the defective and unsafe condition of the entry should defeat the plaintiff's action, was properly a question of contributory negligence and to be determined by the rules in such cases. In Shearman and Redfield on Negligence [5 Ed.], sections 211 and 212, it is said: "The true rule, as nearly as can be stated, is that a servant can recover for an injury suffered from defects due to the master's fault, of which he had notice, if, under all the circumstances, a servant of ordinary prudence, acting with such prudence, would, under similar circumstances, have continued the same work under the same risk. * * * The test of prudence in these cases * * * is that which a prudent servant of the same class using such prudence and judgment as such persons usually possess but no more, might reasonably be expected to apply to the particular case."

This statement of the authors just named was approvingly quoted in Hamilton v. Mining Co., 108 Mo. loc. cit. 376. In a case of this kind mere knowledge of the defect will not defeat a recovery. Negligence on the part of the servant, in such case, does not necessarily arise from his knowledge of the defect, but it is a question of fact to be determined by the jury from such knowledge and the other circumstances in evidence. Bradly v. R'y, 138 Mo. 305; Doyle v. Trust Co., *ante;* Huhn v. R'y, 92 Mo. 440; Mahaney

v. R'y, 108 Mo. 191; Soeder v. R'y, 100 Mo. 673; Stevens v. R'y, 96 Mo. 207; Delvin v. R'y, 87 Mo. 545; Stoddard v. R'y, 65 Mo. 514.

It necessarily follows from the foregoing considerations that the trial court did not err in its action refusing defendant's instruction in the nature of a demurrer to the evidence.

Four instructions were given by the court for the plaintiff and a like number for the defendant. These, when taken together, fully and fairly presented for the consideration of the jury every conceivable phase of the case. Those given for the defendant were especially favorable to its side of the case. The defense of contributory negligence was clearly brought to the attention of the jury by the defendant's several instructions.

The plaintiff's fourth instruction as to the measure of damages in the light of Parsons v. R'y, 94 Mo. 286 and Schwab v. R'y, 104 Mo. 74, is unobjectionable. The amount of the damages assessed by the jury was only $1,200, and this amount was, we think, under the evidence, quite moderate.

The court improperly admitted proof of the declarations made by the pit boss after the death of plaintiff's husband, as to the cause thereof but subsequently by an instruction withdrew it from the consideration of the jury.

EVIDENCE: subsequent declarations of agent: instruction.

These declarations were no part of the *res gestae*, but the error in their admission was cured by the giving of the instruction.

No reason is seen why any other evidence offered by plaintiff was improperly admitted. Certainly the colloquy between the pit boss and the road man, hereinbefore referred to, was clearly admissible to prove defendant's knowledge of the defect and the refusal to repair or furnish the necessary timbers for

that purpose. No error prejudicial to the defendant is discovered in the action of the court in the admission of any evidence for plaintiff.

It results that the judgment must be affirmed. It is so ordered with the concurrence of all.